MULVANEY et al. v. KING PAINT MFG. CO. et al.

(Circuit Court of Appeals, Second Circuit. February 13, 1919.)

No. 175.

1. SHIPPING ⊜⟿54—CHARTER—LIABILITY OF CHARTERER.

Where a barge is chartered to a corporation for a fixed time, the corporation to have exclusive possession it becomes subject to the same liability as a bailee.

2. BAILMENT ⊜⟿14(1)—LIABILITY OF BAILEE FOR HIRE—LOSS OF GOODS.

A bailee for hire is responsible only for ordinary diligence in the care of the property bailed, unless by his contract he has expressly or by fair implication assumed a greater responsibility, but where he has contracted absolutely to return the property, he is liable for the loss of the goods from any cause.

3. CONTRACTS ⊜⟿303(1)—EXCUSE FOR NONPERFORMANCE—DIFFICULTY.

A party must perform his contract obligations, unless performance is rendered impossible by act of God, the law, or the other party; unforeseen difficulties in performance being no excuse.

4. BAILMENT ⊜⟿14(1)—LIABILITY OF BAILEE—CONTRACT.

An express provision, in a contract of bailment for hire, to keep the property safely, does not enlarge the common-law liability of the bailee, and does not make him an insurer for the safety of the article.

5. BAILMENT ⊜⟿11—CONSTRUCTION OF CONTRACT.

The provisions of a contract of bailment should not be enlarged beyond their plain meaning to impose further liability upon the bailee.

6. SHIPPING ⊜⟿54—LIABILITY OF CHARTERER—INJURY TO VESSEL—CONSTRUCTION OF CHARTER.

Provision in the charter of a barge that the barge was to be returned in the same condition as received with usual wear and tear does not render the charterer liable as insurer, or enlarge his common-law liability as bailee to use ordinary care to preserve the barge.

7. SHIPPING ⊜⟿54—LIABILITY OF CHARTERER—INJURY TO VESSEL—ACTS OF GOD.

The charterer of a barge under a charter which did not enlarge his common-law liability is not liable for injuries to the barge, occasioned by the acts of God, or of another person for whom the charterer was not liable.

8. SHIPPING ⊜⟿58(2)—LIABILITY OF CHARTERER—INJURIES TO VESSEL—WEAR AND TEAR—PRESUMPTIONS.

The presumption of want of care arising from failure to deliver a barge in as good order as it was received by charterer is rebutted, where the injury might have occurred through ordinary wear and tear, and the master testified that there was no fault in her navigation, nor any unusual occurrence which would account for the damage.

Appeal from the District Court of the United States for the Eastern District of New York.

Libel, for breach of charter, by Mary L. Mulvaney and others against the King Paint Manufacturing Company, in which the Simmons Transportation Company was impleaded. Decree for respondents, and libelants appeal. Affirmed.

⊜⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Foley & Martin, of New York City (James A. Martin and George V. A. McCloskey, both of New York City, of counsel), for appellants.

Haight, Sandford & Smith, of New York City (Henry M. Hewitt, of New York City, of counsel), for appellee King Paint Mfg. Co.

Frederick W. Park, of New York City, for appellee Simmons Transp. Co.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The barge Leader was demised to the King Paint Manufacturing Company under the terms of the following letter:

"Kent Avenue, S. 9th, and S. 10th Sts.,
"Brooklyn, N. Y., June 2, 1916.

"Mr. J. Mulvaney, Summit, Columbia Heights, Brooklyn—Dear Sir: Confirming our numerous telephone conversations with both you and Mr. Murphy this letter will confirm the charter of barge Leader for a period of six months from June 2d at a monthly rental of $300.00 per month for bare boat, barge to be returned to you in same condition as received with the usual wear and tear.

"Charter money to be paid every thirty days.

"Thanking you for your courtesy in this matter and with kindest regards, we remain,

"Very truly yours,    King Paint Mfg. Co.,
"Per Robert M. King."

On June 2d, the King Paint Manufacturing Company subchartered the barge to the Simmons Transportation Company under the same terms, except that the rental was fixed at $387.50 per month. The barge was delivered on the same day, direct from the libelant. While thus navigated, under the terms of this charter, and on June 30, 1916, the barge was damaged by reason of the Black Tom disaster, which, concededly, was without fault on the part of the charterers. The resulting loss to libelants amounted to $599.90. A survey held on November 29th showed the chime log was split, a bottom plank was broken, and a doorsill was split. The bottom plank was damaged by the explosion at the Black Tom dock, but the evidence is not clear as to how the damage to the chime log occurred or as to how the door sill was split. The district judge found that the damaged chime log could be seen only when the vessel was in dry dock, and rejected the testimony that it was in good condition when seen, as claimed by the witness Pritchard, in August. The record is barren of proof as to an occurrence which would cause injury while the vessel was under charter to the respondent Simmons Transportation Company. Capt. Olson, who was in charge of the barge during the entire period of the charter, states that she was not in any collision, nor was she jarred or jolted in any manner, such as might bring about an injury as that sustained to the chime log. And he says she had plenty of water. He was unable to account for the damage. It was stated that the cost of repairing would amount to $325. No evidence is offered to indicate how the damage to the doorsill occurred, but the cost of repair was given as about $10. The district judge held that the char-

terers were not liable for the injury to the vessel occurring from the Black Tom disaster, and held that there was no evidence to show that there was any negligence by the charterers resulting in damage to the chime log or doorsill, and that the charterers would be relieved from liability, since he found this was but injury occurring through ordinary wear and tear. He further found that there was no proof as to the condition of the bottom of the barge at the time of delivery to the respondents.

[1] Libelants filed a libel against the King Paint Manufacturing Company, which in turn pleaded in the subcharterer, the Simmons Transportation Company. Libelants' theory is that they are entitled to succeed for breach of an express covenant to return the barge in the same condition as received, with the usual wear and tear excepted. This barge was demised to the King Paint Manufacturing Company, which, so far as the libelant is concerned, had exclusive possession, and may therefore be held as the bailee subject to the liability thus imposed.

[2] In the Sun Printing & Publishing Ass'n v. Moore, 183 U. S. 642, at page 654, 22 Sup. Ct. 240, at page 245 (46 L. Ed. 366), Justice White said:

"It is elementary that, generally speaking, the hirer in a simple contract of bailment is not responsible for the failure to return the thing hired, when it has been lost or destroyed without his fault. Such is the universal principle. This rule was tersely stated by Mr. Justice Bradley in Clark v. United States, 95 U. S. 539 [24 L. Ed. 518], where it was said (p. 542): 'A bailee for hire is only responsible for ordinary diligence and liable for ordinary negligence in the care of the property bailed. This is not only the common law, but the general law on the subject [citing authorities].'"

Where, by contract of bailment, the hirer has either expressly or by fair implication assumed the absolute obligation to return, even although the thing hired has been lost or destroyed without his fault, the contract embracing such liability is controlling, and must be enforced according to its terms. A bailee who assumes but the common-law liability is exempt from liability for loss of the consigned goods arising from inevitable accident. But the bailee may, however, enlarge his responsibility by contract, express or fairly implied, and render himself liable for the loss by destruction of the goods committed to his care. The bailment or compensation to be received therefor being a sufficient consideration for such an undertaking. Sturm v. Boker, 150 U. S. 312, 14 Sup. Ct. 99, 37 L. Ed. 1093.

[3] It is well settled that if the party, by his contract, charge himself with an obligation possible to be performed, he must make it good, unless its performance is rendered impossible by the act of God, the law, or the other party. Unforeseen difficulties, however great, will not excuse him. Dermott v. Jones, 2 Wall. 1, 17 L. Ed. 762.

[4] So, an express provision in a contract of bailment for hire to keep the subject of the trust safely will not enlarge the common-law liability of the bailee, for such an obligation the law implies that is to keep as safely as an ordinarily prudent man would his own goods. Such a provision will not constitute the bailee an insurer for the

safety of the thing bailed; and, should it be destroyed by unavoidable casualty or stolen without the fault of the bailee, he will not be responsible. Ames v. Belden, 17 Barb. [N. Y.] 513.

[5] In determining the scope of the terms of the agreement, contracts of bailment should not be enlarged beyond their plain meaning to impose further liability upon the bailee. A covenant to insure should never be implied, and should be imposed only where it is found in the agreement by clear and explicit language. Story on Bailment, § 35.

[6] It was held in Ames v. Belden (17 Barb. [N. Y.] 513) that the covenant to return a boat in as good condition as it was, with the exception of ordinary use and wear, simply imposed an obligation which the common-law liability imposed.

In Young v. Leary, 135 N. Y. 569, 32 N. E. 607, the covenant required the vessel to be redelivered in the same condition as she is now, any ordinary wear and tear excepted. There the court said:

"When language is used which does no more than express in terms the same obligation which the law raises from the facts of the transaction itself, the party using the language is no further bound than he would have been without it."

It would therefore appear that the charterers here are liable only to the extent of the stipulations of the contract, and in construing the contract, since the terms merely declare the liability which the common law would impose, the liability of the bailee is neither increased nor changed, and the charterer undertook merely to return the barge after six months in the same condition as received, with the usual wear and tear. There is no obligation to do more.

[7] The damage to the barge here consists of such as were received from the Black Tom disaster, and that which was claimed to come from some other source. Here the charter does not make the charterers insurers. They cannot be held for the damages caused by the Black Tom explosion, which, concededly, was not due to their negligence, but that of a third party or to an act of God.

[8] The damage to the chime log and the small damage to the doorsill might well have occurred through ordinary wear and tear of the vessel during the period of the charter. When it is made to appear that damage was done to the barge, there was a presumption of liability for want of care arising from the failure to deliver in like order as received, but this presumption of negligence was overcome by the testimony of the captain in charge of the barge, showing that there was no fault in her navigation or any unusual occurrence which would account for the damage to the chime log or the doorsill.

We therefore conclude that such injury was that which was contemplated by the parties as due to ordinary wear and tear. The decree is therefore affirmed.